UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, <br><br> Petitioners, <br><br> -against- <br><br> MAHI PAINTING, INC., <br><br> Respondent. | 22 CV _____ <br><br> **PETITION TO CONFIRM AN <u>ARBITRATION AWARD</u>** |

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, and the Carpenter Contractor Alliance of Metropolitan New York ("Petitioners"), by and through their attorneys, Virginia & Ambinder, LLP, as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement ("CBA") between the New York City District Council of Carpenters (the "Union") and Mahi Painting, Inc. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185.

3. Venue is proper in this Court pursuant to 29 U.S.C. § 185(c) because the Union is located and administered in this district.

## THE PARTIES

4. Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5. Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund are Trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6. Petitioner Carpenter Contactor Alliance of Metropolitan New York f/k/a the New York City and Vicinity Carpenters Labor Management Corporation ("CCA," and together with the ERISA Funds and the Charity Fund, as the "Funds") is a New York not-for-profit corporation and maintains its principal place of business at 245 5th Avenue, Suite 901, New York, New York 10016.

7. Respondent is a domestic business corporation organized under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce

within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains a principal place of business at 121-02-95 Avenue, Richmond Hill, New York 11419.

## THE PROJECT LABOR AGREEMENT

8. Respondent has performed work on public projects for the New York City Housing Authority ("NYCHA"), including at the ("Project").

9. As a contractor for NYCHA, on or about July 14, 2020, Respondent executed a Project Labor Agreement Letter of Assent ("PLA LOA"). A copy of the PLA LOA is annexed hereto as **Exhibit A**.

10. By executing the PLA LOA, Respondent became bound to the NYCHA's Renovation and Rehabilitation Project Labor Agreement ("PLA"). A copy of the PLA is annexed hereto as **Exhibit B**.

11. Under the PLA, Respondent was required to "pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusted employee benefit funds designated in Schedule A [of the PLA] …" *See* Ex. B, Art. 11, Sec. 2.

## THE COLLECTIVE BARGAINING AGREEMENT

12. By way of its assent to the PLA, Respondent also became bound by the applicable collective bargaining agreement with the Union, to the extent such terms did not conflict with the PLA. *See* Ex. B, Art. 2, Sec. 4.

13. As per Schedule A of the PLA, Respondent was bound to the Building Construction Agreement with the Union covering 2017 through 2024 (the "CBA"). *See* Ex. B, Schedule A. A copy of the CBA is annexed hereto as **Exhibit C**.

14. Moreover, on or about November 6, 2020, Respondent became a member of the Building Contractors Association, Inc. (the "BCA"). Confirmation of Respondent's membership in the BCA is annexed hereto as **Exhibit D**.

15. As a member of the BCA, Respondent agreed to be bound to all the agreements entered into between the BCA and the Union.

16. At all relevant times following Respondent's membership in the BCA, it was subject to the same CBA, the Building Construction Agreement with the Union covering 2017 through 2024. A copy of the CBA is annexed hereto as Exhibit C (*see supra* ¶13).

17. The CBA requires Respondent to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. *See* Ex. C, Art. XVII, Sec. 1.

18. The CBA binds Respondent to the policies, rules, and regulations adopted by the Funds. *See* Ex. C, Art. XVII, Sec. 3. Copies of the Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining and Educational and Industry Fund Trust Agreements are annexed hereto as **Exhibits E**, **F**, **G**, and **H**, respectively.

19. The Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). A copy of the Collection Policy is annexed hereto as **Exhibit I.**

20. The CBA and the Collection Policy require Respondent to furnish its books and records when requested by the Funds for the purposes of conducting an audit to ensure compliance with required contributions. *See* Ex. C, Art. XVII, Sec. 1; *see generally* Ex. I, Sec. IV.

21. The Collection Policy and the documents and instruments governing the Funds provide for the resolution of disputes via arbitration. *See* Exs. E-H, Art. V, Sec. 2 (as amended) and Art. VII, Sec. 1 (24) (as amended); *see also* Ex. I, Section VI (1,2).

22. The CBA and Collection Policy provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in addition to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) liquidated damages in the amount of 20% of the unpaid contributions; and (3) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies. *See* Ex. BC, Art. XVII, Sec. 6; Ex. I, Sec. V.

23. The Collection Policy states "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all of the employers bound by or signatory to a collective bargaining agreement with the District Council or any other agreements under which they are obligated to contribute to the Funds." Ex. I, Sec. IV (1).

24. Under the Collection Policy, in the event that an employer refuses to comply with the CBAs' audit procedures, the Funds, "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period…[a] determination under this paragraph shall constitute presumptive evidence of delinquency." Ex. I, Sec. IV (12).

**THE ARBITRATION AWARD**

25. Pursuant to the Collection Policy, Petitioners requested an audit of Respondent covering the period July 16, 2020 to the then-present date in order to determine whether Respondent had remitted the proper amount of contributions to the Funds.

26. A dispute arose between the parties when Respondent refused to provide its books and records for the purposes of conducting the audit.

27. Pursuant to the documents and instruments governing the Funds, Petitioners initiated arbitration before arbitrator Jeffrey Stein. A copy of the Notice of Hearing is annexed hereto as **Exhibit J**.

28. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated May 11, 2022, determining said dispute (the "Award"). A copy of the Award is annexed hereto as **Exhibit K**.

29. The arbitrator found that Respondent violated the CBA when it refused to submit to an audit and remit all required contributions to the Funds, and ordered Respondent to make available its books and records for an audit covering July 16, 2020 through the present, and also pay the Funds the sum of $27,496.14, consisting of estimated principal contributions of $19,843.98, interest through April 14, 2022 of $783.36, liquidated damages of $3,968.80, court costs of $400, attorneys' fees of $1,500, and arbitrator's fee of $1,000, with interest to continue at the rate of 5.25% on the unpaid principal through date of payment. *See* Ex. K.

30. On May 12, 2022, Respondent was served with a letter demanding payment and compliance with the Award. A copy of the demand letter is annexed hereto as **Exhibit L**.

31. As of the date of this Petition, Respondent has failed to comply with the Award.

32. The Award has not been vacated or modified and no application for such relief is currently pending.

33. This Petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

## ATTORNEYS' FEES AND COSTS

34. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the CBA. *See* Ex. C, Art. XVII, Sec. 6.

35. The Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ." Ex. I, Sec. V (6).

36. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit M**.

37. I, Charles Virginia ("CV" in the accompanying billing records), am a 1989 graduate of Fordham University School of Law, and a founding partner of Virginia & Ambinder LLP ("V&A"). I have represented multiemployer benefit funds in ERISA litigation for over 25 years. My time was billed at a rate of $350 per hour for work performed in connection with this action.

38. Maura Moosnick ("MM" in the accompanying billing records) is a 2021 graduate of Fordham University School of Law, and an associate at V&A. She worked as a legal assistant at V&A from 2016 through 2018, and joined V&A as a law clerk in September 2021. V&A billed her time at a rate of $275 per hour for work performed in connection with this action.

39. V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action.

40. All of the above-referenced rates are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services.

41. V&A's total billings in this matter amount to $797.50 reflecting 2.9 hours of work. *See* Ex. M.

42. In addition, V&A will advance $77 in service fees in connection with this matter.

43. A Proposed Judgment is attached hereto as **Exhibit N.**

**WHEREFORE,** Petitioners respectfully request that this Court:

(1) Confirm the Award in all respects;

(2) Order the Respondent to make its books and records available to Petitioners within thirty (30) days for purposes of an audit in compliance with the Award;

(3) Award judgment in favor of the Petitioners and against Respondent in the amount of $27,496.14 pursuant to the Award;

(4) Award judgment in favor of the Petitioners and against Respondent in the amount of $797.50 in attorneys' fees and $77 in costs arising out of this petition;

(5) Award interest on the unpaid principal deficiency contained in the Award at a rate of 5.25% from April 14, 2022 through the date of judgment;

(6) Award post-judgment interest at the statutory rate; and

(7) Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York  
August 1, 2022

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: _____  
Charles R. Virginia, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
Telephone: (212) 943-9080  
cvirginia@vandallp.com  
*Attorneys for Petitioners*